Argued October 11, affirmed November 8, 1950

# RHODES *v.* OREGON STATE VETERINARY MEDICINE EXAMINING BOARD ET AL.

223 P. (2d) 804

*George W. Mead,* of Portland, argued the cause for appellants. With him on the brief was George Neuner, Attorney General, of Salem.

*R. W. Nahstoll* argued the cause for respondent. On the brief were Eben, Jones & Nahstoll, all of Portland.

Before Lusk, Chief Justice, and Brand, Rossman, Hay and Latourette, Justices.

LATOURETTE, J.

Defendant revoked plaintiff's license to practice veterinary medicine in Oregon because of his conviction in the Federal Court of violating the Internal Revenue Code.

Plaintiff sought out a writ of review in the Circuit Court. Upon defendant's return to the writ, consisting of Exhibits "A" to "D," inclusive, embracing the Veterinary Board's proceedings of revocation, the lower court reversed the Board's order, hence, this appeal.

The Board's authority to revoke the license of a veterinarian will be found in § 54-1031, ch. 582, Oregon Laws, 1947, the applicable portion of which follows:

"With the consent of four members thereof, the board may revoke or suspend a permit or license granted to any holder thereof under this act for unprofessional or dishonorable conduct. Before a permit or license can be revoked or suspended for such cause the board must serve notice in writing on the holder of the permit or license, attaching thereto a copy of any charge or charges against him or her, and appoint a day of hearing, at which time the licensee, or any witness in his or her behalf, may appear and give testimony in refutation of such charge. In case the board, after such hearing, still desires to revoke or suspend the permit or license of the holder thereof, the decision, specifically stating the ground upon which such permit or license was revoked or suspended, must be reduced to writing and a copy thereof delivered to the holder of said permit or license upon the demand of any such holder."

Defendant's Exhibit "A" is the judgment and commitment of plaintiff in the Federal Court and is unimportant so far as this opinion is concerned and will, therefore, be omitted. Exhibits "B," "C" and "D" follow:

"EXHIBIT 'B'

"OREGON STATE VETERINARY MEDICAL
"EXAMINING BOARD
"Office of the Secretary
"15 1st Ave., S. E.
"Forest Grove, Oregon
"July 1, 1949

"Dr. Wm. E. Rhodes
"3565 N. E. Sandy
"Portland 13, Oregon
"c/o Mrs. W. E. Rhodes

"Dear Doctor Rhodes:

"In regard to your license to practice Veterinary Medicine in Oregon.

"The Oregon State Veterinary Medical Examining Board is considering revoking your license to practice in Oregon because of unprofessional and dishonorable conduct.

"Paragraph 10 of section 5, chapter 582, Oregon Laws of 1947, which is an amendment of section 54-1031, O. C. L. A. defines unprofessional and dishonorable conduct as being, among other things, conviction of a felony.

"A hearing has been called for 8:00 P. M. on Monday July 18, 1949, to be held in the Blue Room on the mezzanine floor of the Multnomah Hotel in Portland, Oregon.

"You may appear, or any witness may appear in your behalf, to give testimony in refutation of the above named charge at this hearing.

"Yours truly,
"Elwyn W. Coon, Sec.
"Elwyn W. Coon, Sec."

"EXHIBIT 'C',

"Excerpts from the minutes of a meeting of the Oregon State Veterinary Medical Examining Board in regular session held at the Multnomah Hotel, Portland, Multnomah county, Oregon, on July 18 to 19, 1949, inclusive. Present at such meeting were the following members of the board, Fred W. Lange, President, Salem, Oregon; Elwyn W. Coon, Secretary, Forest Grove, Oregon; Stanley E. Philips, Member, Medford, Oregon; Peter T. Tweed, Member, Lebanon, Oregon; Otto Ruehl, Member, Portland, Oregon:

'Dr. William E. Rhodes, having been convicted of Federal Income Tax evasion, a certified copy of that conviction being at hand, as well as a ruling by Attorney General Neuner that such conviction establishes the fact that a felony has been com-

mitted as described in paragraph 10 of Section 54-1031 Oregon Laws.

'It being the duty of the Veterinary Medical Examining Board as defined in Section 54-1011 Oregon Laws, to carry out the provisions of the act, a hearing was called for 8:00 P. M. July 18, 1949 to be held in the Blue Room of the Multnomah Hotel in Portland, for Dr. Rhodes or his representatives to show cause why his license to practice should not be revoked.

'The hearing was attended by approximately 60 representatives of Dr. Rhodes headed by Mr. Eben, an attorney. Those who spoke urged the Board to be lenient with Dr. Rhodes, so he could come back from the Federal Penitentiary and take his regular place in society.

'After everyone who wished had spoken President Lange informed them that the Board would render its decision within ten days and inform them by letter. The hearing was adjourned.

'It being felt by the Board members that they needed some legal advice before rendering a decision in the Rhodes matter Mr. George W. Mead, an attorney with offices at 1107 Public Service Building, was called in to consult with the Board Tuesday afternoon July 19, 1949. After considerable discussion the Board was unanimous in its decision to revoke the license of Dr. Rhodes, and the Secretary was instructed to so notify Dr. Rhodes by registered letter addressed to Dr. Rhodes in care of Mrs. Rhodes.' ''

"EXHIBIT 'D'

"OREGON STATE VETERINARY MEDICAL "EXAMINING BOARD
"Office of the Secretary
"15 1st Ave., S. E.
"Forest Grove, Oregon
"July 1, 1949

"Dr. W. E. Rhodes
"c/o Mrs. W. E. Rhodes
"3565 Northeast Sandy
"Portland 13, Oregon
"Dear Dr. Rhodes:
"Please be advised that at a meeting of the Oregon State Veterinary Medical Examining Board held yesterday, July 19, 1949, your license to practice veterinary medicine in the State of Oregon was revoked for unprofessional and dishonorable conduct, to-wit: conviction of a felony.

"Very truly yours,
"Elwyn W. Coon
"ELWYN W. COON,
"Secretary"

Referring to Exhibit "B," we find a letter written to plaintiff in reference to the revocation of his license to practice veterinary medicine in Oregon, but nowhere is there any showing that such notice or letter was served on the plaintiff, nor do we find that there was attached thereto a copy of any charge or charges against him. In fact, there is nothing in the record showing that any charges or complaint were ever made against the plaintiff. Taking it by and large, the above statute contemplates that charges must first be made against the veterinarian, and that a copy of such charges shall be attached to the written notice in order to give the Board jurisdiction of the subject matter. It is a universal and natural right under the good, old-fashioned American rule that, before a man may be brought to trial in a civil, criminal or quasi-criminal proceeding, there must be a charge filed against him, setting out the nature of the offense. The exhibits set out in the Board's return to the writ are woefully lacking in this respect, and, therefore, it is obvious, without recitation of authority, that the Board pro-

ceeded in the revocation of plaintiff's license without any authority.

■ There is another reason why the Board's disposition of this case was illegal, and that is that there is no showing that plaintiff was ever served with notice in writing of the proposed license revocation. Another basic American rule is that every man must have his day in court. It is contended by the Board, however, that since, "The hearing was attended by approximately 60 representatives of Dr. Rhodes headed by Mr. Eben, an attorney.", that that was tantamount to a personal appearance on the part of the plaintiff. There is nothing in the aforementioned language which would sustain the Board's contention that the plaintiff appeared at such hearing personally or by his attorney.

The case of *State v. Charlesworth*, 141 Or. 290, 16 P. (2d) 1116, 17 P. (2d) 1104, is very illuminating on the question involved in the case at bar. In that case, defendant's conviction of selling securities without having obtained a permit so to do from the Corporation Commissioner of the State of Oregon was based on a revocation of the defendant's permit to sell securities in the state. The question of the legality of the revocation of the permit by the Corporation Commissioner was involved. The court said, speaking through the late Mr. Justice Harry Belt:

> "It is plain that the suspension or revocation of a permit by the corporation commissioner must be in accordance with the procedure specified in the above statutory provisions."

Because the Corporation Commissioner's revocation of defendant's permit in that case was not in accordance with the statutory provisions, the court held such revo-

cation illegal and, consequently, the conviction without warrant of law.

■ No complaint having been made against plaintiff embracing the charges on which the Board relied and no legal notice having been given to plaintiff of such charge as by law provided, the Board had no jurisdiction of either the subject matter or of the person. Its revocation of plaintiff's license was theretofore illegal and void. The judgment of the lower court will be affirmed.